SCHENLEY INDUSTRIES, INC., and
Daniel Goldstein, Plaintiffs,

v.

David L. LADD, Commissioner of
Patents, Defendant.

Civ. A. No. 1609–62.

United States District Court
District of Columbia.

Nov. 14, 1963.

Harold I. Kaplan, Blum, Moscovitz, Friedman, Blum & Kaplan, New York City, Robert I. Dennison, Washington, D. C., for plaintiffs.

Clarence W. Moore, Sol., Washington, D. C., for defendant.

JACKSON, District Judge.

This civil action was heard on October 29, 1963, and the Court having considered all the evidence presented, including the record in the Patent Office, and arguments of counsel, entered judgment for plaintiffs.

In accordance with the Federal Rules of Civil Procedure, Rule 52(a), 28 U.S.C., the Court makes the following Findings of Fact and Conclusions of Law:

### FINDINGS OF FACT

1. This is a civil action brought under 35 U.S.C. § 145 in which plaintiff, Daniel Goldstein, as the applicant, and Schenley Industries, Inc., as the assignee of an application for patent entitled "COMBINED CONTAINER FOR BOTTLE AND ADVERTISING DISPLAY", Serial No. 523,301, filed July 20, 1955, seek to have the Court authorize the defendant, Commissioner of Patents, to issue to the assignee Letters Patent of the United States containing claims 70 through 83 of said application.

2. The Board of Appeals of the Patent Office rejected claims 70 through 83 on prior art and in such rejection primarily relied on Agar Patent No. 1,-481,333 granted on January 22, 1924, and the British Patent to Hucks No. 15,422 granted on March 9, 1889. Method claims 80 and 81 were also rejected on the ground of aggregation. Claims 1 through 5, 17 and 24 through 43 stand allowed and are not in issue in this proceeding.

3. The application in suit with respect to the claims in issue discloses a combination shipping and display device or package and method of packaging and marketing receptacles such as bottled goods, the various components of applicant's shipping container being initially provided for protectively packaging and shipping the goods, and at the point of sale, the various shipping components may be used individually and/or in various combinations as exemplified in subject application for the enhanced display and merchandising of the goods shipped in such shipping container.

4. The application in suit further discloses various types of advertising displays that may be erected from the components of the container normally utilized for the protective packaging and shipping of the merchandise or bottled goods, thereby precluding the necessity of providing additional advertising material at the point of merchandising or sale and providing for the selective full or partial utilization of packaging components that are normally discarded at such point of sale.

5. In the normal shipping condition of the bottled goods, they are disposed in the container in the compartments provided for the same without structural interengagement therein and with the

container having only components normally utilized for the shipping container function, these components being constructed and arranged so as to be readily convertible from the shipping and protective packaging function to the display function at the point of sale or merchandising of the goods. There are no special display components provided (in addition to the shipping components required in the shipping container) and the display arrangements achieved from the shipping container are derived solely from the components normally utilized for shipping and protectively packaging and which are normally discarded at point of sale or use of the goods.

6. Applicant's invention also embraces the method of packaging and marketing receptacles or bottled goods utilizing the above referred to convertible shipping container for the merchandising of the goods. Pursuant to this merchandising technique, the bottled goods are protectively packed in the compartment, defined by the compartment-defining assembly, out of operative engagement with the apertures formed in the panels, the packed container is shipped to its location of ultimate sale, and the bottled goods and certain of the panels are removed from the container and the formations of certain of the panels are engaged with each other and the necks of bottled goods are engaged in the apertures of other of the panels for the formation at the point of sale of a display array including the goods and panels removed from the package.

7. The invention of the application in suit has been commercialized by plaintiff, Schenley Industries, Inc., under the trademark ADVERCASE, and the evidence established the following advantages therefor:

(1) The components used for display purposes are the selfsame components that are provided and are required for the protective packaging and shipment of the bottled goods resulting in the reduction of the cost of packaging, distribution and merchandising of the goods.

(2) There is eliminated the need of providing additional advertising material at the point of merchandising or sale.

(3) There is provided selective full or partial utilization of packaging and shipping components that are normally discarded at the point of sale.

(4) There are eliminated or minimized bookkeeping, accounting and mechanics of handling, shipping and cost of display material as a separate function.

(5) The elimination of the shipping cost of the separate display material since the shipping charge on the packaged bottled goods would also cover the display material embodied in the shipping case.

(6) Initiate and interest the retailer to set up displays himself so as to reduce the expense incident to the utilization of display personnel.

(7) The effectuation of the automatic coordination between advertising, sales promotion and marketing since the sales promotion material for the merchandise would arrive at the point of sale with the merchandise.

8. The basic prior art patent relied upon by the Board of Appeals is Agar Patent No. 1,481,333 which discloses a liner and pad which may be used singly or in combination to form displays. Agar does not utilize the other shipping components for display purposes, such as the separators and dividers, and there is no association or integration of the merchandise after shipment and at the point of sale with one or more selected shipping components so as to form an integrated display. In essence, Agar forms an advertising display minus the merchandise from a liner and pad without the utilization of any other shipping components.

9. In the Agar patent the liners and/or pads are devoid of formations or apertures that may be interengaged with

the goods at the point of display or sale for display purposes.

10. The British Patent to Hucks, No. 15,422, relied upon by the Board of Appeals as subsidiary prior art discloses a series of three quadrilateral boards of different size uniformly apertured to receive bottle necks in order to form a stacked bottle display. The apertured boards are solely display boards and do not have a shipping container origin or any relation to specific shipping components of a shipping container.

11. The claims in issue in this proceeding are directed to the concept in which the normal shipping components function in the manner of conventional shipping components in the packaged and shipped condition of the containers and in which, at the point of sale or display, one or more of the shipping components may be interengaged with each other and the bottled goods to form a display in which the goods and shipping components take on a vitally new character from the same components in their relationship existing in the shipping container.

12. The evidence established that this concept is not disclosed or suggested by the prior art patents cited and relied upon by the Board of Appeals, with specific reference to the patents to Agar and Hucks, taken singly or combined in any valid combination. This concept is novel and of patentable significance and plaintiffs are entitled to the patent claims in issue directed to this concept.

13. Claims 70 through 79, and 82 and 83 are product or article claims directed to a combination shipping and display device or package and claim 70 may be generally illustrative and includes the following structural limitations not present or suggested in the prior art, with specific reference to the cited Agar and Hucks patents:

"a plurality of said panels having a plurality of aperture-defining portions in predetermined spaced relation and dimensioned to accommodate said receptacle necks but not said body parts of said receptacles

so that when the latter and said plurality of panels are removed from said container said necks may be interengaged with said aperture-defining portions to form a display for effectively merchandising said goods."

14. Claims 80 and 81 are directed to the method of packaging and marketing the receptacles of merchandise and are essentially directed to the following series of basic steps: (1) providing a container for receiving and protecting receptacles in transit; (2) positioning in the container a compartment-defining assembly comprising separator and divider panels; (3) protectively packing the receptacles in their compartments out of operative engagement with the aperture-defining portions of the panels; (4) shipping the packed container to its location of ultimate sale, and (5) removing the receptacles and selected panels from the container and engaging the apertured portions of the panels with the necks of the receptacles to form a merchandising display.

15. Claims 80 and 81 define a novel and patentable method directed to the underlying concept of the invention aforenoted. These claims define a series of related steps which provide for the sequential convertibility of the package into a preselected display of the components and the goods which is the ultimate objective. These claims are thus directed to a series of method steps which cooperate in a patentable sense towards the desired and or objective and are not aggregative.

16. The evidence established that the subject matter of the claims in issue has enjoyed widespread commercial success and met with immediate and enthusiastic reception in the trade.

17. Claims 70 through 83 are patentable over the prior art.

## CONCLUSIONS OF LAW

1. This Court has jurisdiction over the subject matter of this action.

2. The differences between the subject matter sought to be patented and the

prior art are such that the subject matter as a whole would have been unobvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains.

3. The application in suit as pertains to the subject matter of this action complies with the requirement of 35 U.S.C. § 103.

4. Claims 80 and 81 define a novel and patentable combination of method steps.

5. The subject matter of this action has enjoyed commercial success and widespread acceptance in the trade to which said subject matter pertains.

6. Plaintiffs are entitled to a patent containing claims 70 through 83.